IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RITA DUKE                              )
                                       )
v.                                     )     No. 3:15-0645
                                       )     Judge Sharp/Bryant
SOCIAL SECURITY ADMINISTRATION         )

To:     The Honorable Kevin Sharp, Chief Judge

# REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under Title II of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 16). Plaintiff has further filed a reply in support of her motion. (Docket Entry No. 17) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

## I. Introduction

Plaintiff filed her application for disability insurance benefits in March 2011,[2] alleging disability onset as of July 30, 2008, due to problems with her back, shoulders, and feet, including nerve pain and arthritis, as well as fibromyalgia and mental problems. (Tr. 14, 160, 193) Her application was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on October 29, 2013, when plaintiff appeared with counsel and gave testimony. (Tr. 46-73) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until January 15, 2014, when she issued a written decision finding plaintiff not disabled. (Tr. 14-23) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 30, 2008 through her date last insured of September 30, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe combination of impairments: mild degenerative disc disease and history of bilateral shoulder pain (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one

---

[2]Plaintiff had also filed an application for supplemental security income benefits one month earlier, in February 2011; that application was granted upon initial review, establishing her disability onset as of March 10, 2011. (Tr. 14) As to her application for disability insurance benefits, the date that she was last insured against disability is September 30, 2009, well before her established date of disability onset. The inquiry below thus focused on the issue of her disability between the alleged onset date of July 30, 2008, and the date last insured of September 30, 2009.

      of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the Administrative Law Judge finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could lift and/or carry up to 25 pounds occasionally and 20 pounds frequently; sit up to seven hours total in an eight-hour workday; stand up to five hours total in an eight-hour workday; walk up to four hours total in an eight-hour workday; with occasional ability to reach overhead, occasionally use the feet for operation of foot controls; occasionally balance, stoop, kneel, crouch, and crawl; and no exposure to hazards in the workplace, such as unprotected heights or moving machinery (to account for side effects from medications).

6. Through the date last insured, the claimant was capable of performing past relevant work as an assembler and food preparer/server. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 30, 2008, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(f)).

(Tr. 16, 18, 23)

      On April 13, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

A thorough review of the record evidence that relates to the limited period under review here is contained in the decision of the ALJ. (Tr. 18-21) Plaintiff's brief contains the following recitation of record evidence which both pre- and post-dates September 30, 2009, the date last insured (DLI):

Plaintiff Rita Duke was born on June 15, 1959, was 49 years old on her alleged disability onset date, and she has a high school education. R. 59 and 65.[3]

On August 15, 2005, Plaintiff underwent left anterior acromioplasty due to chronic impingement syndrome of the left shoulder. R. 272.

An MRI of the lumbar spine dated December 11, 2008, revealed mild spondylosis and facet arthropathy at L4-5 and spondylosis, disc desiccation, disc bulge with bilateral facet arthropathy, mild central stenosis with enhancing fibrosis, and mild to moderate and mild left foraminal stenosis at L5-S1. R. 302-303.

A lumbar discography from September 9, 2009, revealed concordant pain at L5-S1 with a radial annular tear. Plaintiff was subsequently diagnosed with degeneration of lumbar or lumbosacral IV disc. R. 306-307.

An MRI of the left shoulder from January 12, 2009, revealed mild supraspinatus tendinopathy. R. 298. An MRI of the right shoulder showed mild supraspinatus tendinopathy and mild AC degeneration. R. 299.

Records from 2009, prior to the DLI, show assessments of chronic intractable pain; cervical DDD; cervical spondylosis; rotator cuff syndrome; bilateral CTS; lumbar DDD; depression with anxiety disorder; lumbar postlaminectomy syndrome; chronic pain syndrome; regional cervical and shoulder girdle myofascial pain syndrome; intermittent bilateral sciatica; patellofemoral pain syndrome; bilateral cubital tunnel syndrome; lumbar spondylosis; and bilateral rotator cuff impingement syndrome status post left shoulder surgery. R. 275, 279, 282, and 293. An EMG/NCS from January of 2009 revealed mildly abnormal findings suggestive of a chronic right mild SI radiculopathy. R. 285.

Physical examinations performed prior to the DLI revealed a positive impingement

---

[3]Plaintiff's citations track the pagination of the Court's electronic case filing system, rather than the stamped page numbers on the actual pages of the record.

sign; pain with ROM testing of the lumbar spine; marked weakness of her core trunk stabilizers; pain with patellofemoral compression of both knees; global diminished strength of the rotator cuff and scapular stabilizers; and marked impaired strength and endurance of the core trunk stabilizers. R. 275, 282, and 285. Plaintiff has also complained of diminished sensation in the median innervated digits bilaterally. R. 275 and 285.

An MRI of the lumbar spine from May 14, 2010, revealed facet arthrosis at L4-5; a broad posterior protrusion at L5-S1 which creates mild central stenosis; and mild foraminal stenosis due to disc encroachment and facet arthrosis. R. 304-305.

An MRI of the left shoulder from February 2, 2011, showed mild supraspinatus and infraspinatus tendinopathy. R. 354.

An EMG/NCS from March 10, 2011, revealed mild right and borderline left median sensory neuropathy and findings suggestive of, but not conclusive for, C8-T1 radiculopathy. R. 316.

A CT of the right foot from March 29, 2011, showed mild degenerative osteoarthritic changes of multiple intertarsal joints, talotibial and talofibular joints, and the first metatarsophalangeal and tarsometatarsal joints as well as enthesophyte formation. R. 364.

An MRI of the cervical spine from April 28, 2011, showed minimal disc bulges at C3-4 and C6-7 as well as a broad-based disc bulge at C5-6 with mild central canal stenosis. R. 377. A CT of the cervical spine from April 20, 2012, revealed a posterior central broad-based disc protrusion at C5-6 abutting the anterior aspect of the cervical spinal cord causing mild to moderate central spinal stenosis; left posterior paracentral broad-based mild disc protrusion at C4-5 abutting the left anterior aspect of the cervical spinal cord causing mild central spinal canal stenosis; and very mild posterior central broad-based disc protrusion at C3-4 which minimally indents the anterior thecal sac. R. 442-443.

An imaging study from April 19, 2012, revealed mild diffuse uptake consistent with probable arthritic changes involving the cervical spine, lumbar spine, SI joints, knees, ankles, and wrists. R. 446.

A CT of the lumbar spine from April 19, 2012, revealed minimal grade 1 anterolisthesis of L5 on S1 with DDD and disc protrusion; left neuroforaminal and bilateral lateral recess encroachment at L5-S1; and possible contact with the transiting left L5 and bilateral S1 nerve roots. R. 448.

5

Records from December of 2010 show diagnoses of MDD, recurrent, severe and Generalized Anxiety Disorder with a GAF score of 41. R. 309.

Dr. West completed an MSS assigning the Plaintiff a less-than-sedentary RFC. R. 950. As you can tell from the file, Dr. West treated Plaintiff prior to her DLI.

Records from Dr. West show treatment for unspecified arthropathy; chronic pain syndrome; hepatitis C; and benign essential HTN. R. 1078-1100.

An MRI of the lumbar spine from January 11, 2012, revealed a small protrusion at L4-5 indenting upon the thecal sac; bilateral facet and ligamentum flavum hypertrophy; and spondylosis at L4-5. R. 937.

On February 16, 2010, the Plaintiff underwent excision of a mass on the right foot. R. 514.

Records from Pain & Spine Consultants from 2009 show assessments of degeneration of lumbar or lumbosacral IV disc; lumbar spinal stenosis; lumbar postlaminectomy syndrome; and thoracic or lumbosacral neuritis or radiculitis. R. 535-539.

Plaintiff was admitted from December 17, 2012, through December 24, 2012, due to gastroenteritis. R. 918. She was also admitted from April 23, 2013, through May 1, 2013, due to pancreatitis. R. 666.

Life Care records show assessments of panic disorder; GAD; and depressive disorder NOS. R. 952-1015.

Dr. Weisburg reviewed Plaintiff's file and rendered an opinion in this case. R. 408-415.

The Vocational Expert testified that according to Dr. Weisburg's opinion and limitations, if thePlaintiff is limited to standing and walking for a total of two hours out of eight and sitting for six hours, Plaintiff has a sedentary RFC. R. 75.

The Vocational Expert also testified at the hearing that the Plaintiff's past relevant work was as follows: assembler-light and unskilled and food preparation and server-light and semiskilled. R. 72.

(Docket Entry No. 15 at 2-6)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). While this is a deferential standard, it is not a trivial one; a finding of substantial evidence must "take into account whatever in the record fairly detracts from its weight." Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). Nevertheless, the SSA's decision must stand if substantial evidence supports the conclusion reached, even if the record contains substantial evidence that would have supported an opposite conclusion. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520, 416.920. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." Jones v.

Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in failing to weigh or even mention the October 30, 2012 opinion of her treating physician, Dr. West. (Tr. 945-46) She further

9

contends that this opinion is due controlling weight, as it is not inconsistent with other substantial evidence and is well supported in the record. However, this opinion was rendered three years after plaintiff's date last insured -- during a time when the ALJ had already decided that plaintiff was disabled (Tr. 14) -- and does not give any indication that it applies to the prior period. Since Dr. West's opinion is, by its terms, irrelevant to the issue of plaintiff's disability prior to September 30, 2009, the ALJ was not obliged to mention it in her decision. Although plaintiff attempts to correlate Dr. West's opinion to his prior treatment of plaintiff beginning in June 2009, the mere fact of prior treatment cannot support the retroactive application of Dr. West's 2012 opinion, when the opinion itself does not purport to apply to the prior period. Indeed, Dr. West's earlier treatment notes were reviewed by the ALJ, and were notable for their failure to support plaintiff's claim of disabling limitations. (Tr. 21) The undersigned finds no error here.

Plaintiff next argues that the ALJ erred in failing to properly weigh the assessment of nonexamining consultant Dr. Weisberg, who in July 2011 assigned standing/walking restrictions that would appear to limit plaintiff to sedentary work, based on an MRI finding of lumbosacral retrolisthesis and mild stenosis in February 2011 and a July 2011 finding of decreased cervical and lumbosacral range of motion. (Tr. 403-10) Again, these findings and this opinion do not by their terms pertain to the period under review here. Indeed, Dr. Weisberg issued an addendum to his assessment, dated August 8, 2011 (Tr. 411), in which he clarified that the medical evidence does not support the limitations he assessed until March 10, 2011, the date of the abnormal results on EMG studies which confirmed plaintiff's neuropathy (Tr. 310-11). The ALJ thus did not err in failing to discuss Dr. Weisberg's assessment.

Plaintiff next argues that the ALJ erred -- and that the error offended due process -- when she described the December 2008 lumbar spine MRI results as revealing only "mild central stenosis, greater on the right than the left" (Tr. 20), instead of what the MRI actually revealed, which was "mild central stenosis" with "[m]ild **to moderate** right and mild left foraminal stenosis." (Tr. 297-98 (emphasis added))  Plaintiff argues that "[t]he ALJ should not be permitted to misstate and mischaracterize the evidence in the decision in an attempt to minimize the severity of the condition or fail to properly consider the actual MRI results." (Docket Entry No. 15 at 13)  It is clear to the undersigned that the ALJ did no such thing.  In excoriating the ALJ for sweeping the word "moderate" under the rug, plaintiff ignores the fact that the radiologist's impression from the MRI findings was "mild central stenosis with right greater than left foraminal stenosis" (Tr. 298), and that the physician who ordered the MRI, Dr. Stephen M. Neely, signed a treatment note describing the MRI results as showing "[m]ild central stenosis on the right greater than the left" (Tr. 290) -- exactly the description referenced by the ALJ in her discussion.  (See Tr. 20 ("The claimant returned to discuss results of the MRI, which revealed ... mild central stenosis, greater on the right than the left...."))  In describing this finding exactly as plaintiff's treating physician described it, the ALJ plainly did not err.

Finally, plaintiff argues that the ALJ erred in failing to specifically state whether she found plaintiff's testimony credible or not, and the reasons for such a finding.  This argument is specious.  Plaintiff is referred to pages eight and nine of the ALJ's decision (Tr. 21-22), which contain her detailed rationale for finding plaintiff's testimony "not persuasive to the extent alleged prior to the date last insured." (Tr. 22)  Substantial evidence supports the ALJ's credibility finding, which is due great weight and deference upon judicial

review. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)).

In sum, the undersigned finds substantial evidence in the record supporting the ALJ's determination that plaintiff's impairments and symptoms worsened unto the point of becoming disabling in March 2011, but were not of a severity to preclude a reduced range of light work prior to September 30, 2009.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 25th day of August, 2016.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE